Dear Ms. Kelly:
This opinion is in response to a series of hypothetical situations you have posed, to-wit:
 I.
Your first question asks:
 I. If a third class city 1) in 1980 levied a property tax for its General Revenue Fund of $1.00 per $100 assessed valuation, 2) in 1984 levied a property tax for its General Revenue Fund of $1.00, 3) in 1985 was required to reduce its property tax rate for its General Revenue Fund to $0.75 because of the constitutional and statutory provisions requiring a reduction in property taxes the year a general reassessment occurs, and 4) has never voted upon any additional property taxes as authorized by Article X, Section 11(c) of the Missouri Constitution,
 A. What is the city's maximum permissible property tax rate for 1986 for its General Revenue Fund which can be enacted by the governing body of the city without voter approval?
 B. What is the city's maximum property tax rate for 1986 for its General Revenue Fund which can be authorized by a simple majority of the voters?
 C. What is the city's maximum property tax rate for 1986 for its General Revenue Fund which can be authorized by a two-thirds majority of the voters?
 D. Do the maximum property tax rates referred to in subparagraphs B and C above continue indefinitely?
 E. If the governing body of the city desires to enact a property tax for 1986 for parks,
 1) What is the maximum rate that can be authorized by the voters?
 2) Does such authorization require approval of a simple majority of the voters or approval of two-thirds of the voters?
The City's 1980 non-voter-approved one dollar ($1.00) general operating levy was authorized by Missouri Constitution, Article X, Section 11(b) and Section 94.060.1, RSMo 1978, which state in part:
 Section 11(b). Any tax imposed upon such property by municipalities, . . . for their respective purposes, shall not exceed the following annual rates:
 For municipalities — one dollar on the hundred dollars assessed valuation;
* * *
 Section 94.060 — 1. All cities of the third class in this state may by ordinance levy and impose annually for municipal purposes upon all subjects and objects of taxation within such cities a tax which shall not exceed the maximum rate of one dollar on the one hundred dollars assessed valuation; provided, however, that the rate of tax levy of one dollar on the one hundred dollars assessed valuation for municipal purposes may be increased for such purposes for a period not to exceed four years at any one time when such rate and purpose of increase are submitted to a vote of the voters within such cities and two-thirds of the voters voting thereon shall vote therefor, but such increase so voted shall be limited to a maximum rate of taxation not to exceed thirty cents on the one hundred dollars assessed valuation.
In addition, Missouri Constitution, Article X, Section11(c), provides in part:
 In all municipalities . . . the rates of taxation as herein limited may be increased for their respective purposes for not to exceed four years, when the rate and purpose of the increase are submitted to a vote and two-thirds of the qualified electors voting thereon shall vote therefor; . . .
The one dollar ($1.00) levy in Section 94.060.1, RSMo 1978, is authorized by Missouri Constitution, Article X, Section11(b), quoted above. The increase of that levy above one dollar ($1.00) in Section 94.060.1, RSMo 1978, is authorized in Missouri Constitution, Article X, Section 11(c). Although the one dollar ($1.00) levy and the increase in that levy above one dollar ($1.00) are both for "municipal purposes", we believe that these items should be considered separate levies for purposes of this opinion. The levy authorized by Article X, Section 11(c) is of limited duration, i.e., four years, and is authorized by its own constitutional provision.
On November 4, 1980, on the date that the City was still maintaining a one dollar ($1.00) general operating levy, the voters approved the Hancock Amendment, particularly Missouri Constitution, Article X, Section 22(a), which states in part:
 Counties and other political subdivisions are hereby prohibited from levying any tax, license or fees [sic], not authorized by law, charter or self-enforcing provisions of the constitution when this section is adopted or from increasing the current levy of an existing tax, license or fees [sic], above that current levy authorized by law or charter when the section is adopted without the approval of the required majority of the qualified voters of that county or other political subdivision voting thereon. . . . If the assessed valuation of property as finally equalized, excluding the value of new construction and improvements, increases by a larger percentage than the increase in the general price level from the previous year, the maximum authorized current levy applied thereto in each county or other political subdivision shall be reduced to yield the same gross revenue from existing property, adjusted for changes in the general price level, as could have been collected at the existing authorized levy on the prior assessed value.
Another part of the Hancock Amendment, particularly Missouri Constitution, Article X, Section 24(b), provides:
 The provisions contained in sections 16 through 23, inclusive, of this article are self-enforcing; provided, however, that the general assembly may enact laws implementing such provisions which are not inconsistent with the purposes of said sections.
On November 7, 1978, the people adopted Missouri Constitution, Article X, Section 10(c), which states:
 The general assembly may require by law that political subdivisions reduce the rate of levy of all property taxes the subdivisions impose whether the rate of levy is authorized by this constitution or by law. The general assembly may by law establish the method of increasing reduced rates of levy in subsequent years.
In State ex rel. Cassilly v. Riney, 576 S.W.2d 325 (Mo. banc 1979), the court indicated the need for a general reassessment of property values. This general reassessment was delayed by the General Assembly until the year beginning January 1, 1985. See Section 137.750.1, RSMo Supp. 1984.
To offset the effects of the increases in the assessed valuation of property due to the general reassessment, the General Assembly has provided a statutory general reassessment property tax rate rollback in Section 137.073.2, as enacted by Senate Committee Substitute for House Substitute for House Committee Substitute for House Bills Nos. 1022, 1032 and 1169, Eighty-Third General Assembly, Second Regular Session (hereinafter sometimes referred to as "S.C.S.H.S.H.C.S.H.B. 1022, 1032 and 1169"), which states:
 2. Whenever changes in assessed valuation that result from a general reassessment of real property within the county are entered in the assessor's books, the county clerk in all counties and the assessor of St. Louis city shall notify each political subdivision wholly or partially within the county of the change in valuation, and each political subdivision wholly or partially within the county, including municipalities maintaining their own tax books, shall immediately revise the rates of levy for each purpose for which taxes are levied to the extent necessary to produce from all taxable property, including state assessed property, substantially the same amount of tax revenue as was produced in the previous year and, in addition thereto, a percentage of the previous year's revenues, equal to the preceding valuation factor of the political subdivision.
Thus, under the facts hypothesized above, the 1985 general reassessment may have caused either of at least two applicable property tax rate rollbacks: The statutory general reassessment property tax rate rollback in subsection 2 of Section 137.073, as enacted by S.C.S.H.S.H.C.S.H.B. 1022, 1032 and 1169, or its predecessor, and the Hancock Amendment tax rate rollback contained in Missouri Constitution, Article X, Section 22(a).
Subsection 5(2) of Section 137.073, as enacted by S.C.S.H.S.H.C.S.H.B. 1022, 1032 and 1169, provides that each political subdivision is to calculate its tax rate rollback or reduction under both the statutory general reassessment provisions and the Hancock Amendment provisions, if applicable, and is to use the tax rate rollback which produces the lowest tax rate.
Although the Hancock Amendment does not provide a method for increasing a tax rate subsequent to a tax rate reduction, Missouri Constitution, Article X, Section 24(b) allows the General Assembly to enact implementing legislation. Also, Missouri Constitution, Article X, Section 10(c), allows the General Assembly to establish the method of increasing property tax rates in years subsequent to a tax rate reduction. In subsection 5(2) of Section 137.073, as enacted by S.C.S.H.S.H.C.S.H.B. 1022, 1032 and 1169, the General Assembly stated as follows:
 It is further the intent of the general assembly, under the authority of section 10(c) of article X of the Constitution of Missouri, that the provisions of this section be applicable to tax rate reductions or revisions mandated under section 22 of article X of the Constitution of Missouri as to reestablishing tax rates as reduced or revised in subsequent years, enforcement provisions, and other provisions not in conflict with section 22 of article X of the Constitution of Missouri; . . .
The method which the General Assembly has provided for increasing tax rates subsequent to a tax rate reduction for third class cities is contained in subsection 6 of Section137.073, as enacted by S.C.S.H.S.H.C.S.H.B. 1022, 1032 and 1169, which states:
 (1) In all political subdivisions except school districts, the tax rate ceiling established pursuant to this section shall not be exceeded in the year of the tax rate reduction or thereafter unless a higher tax rate is approved by a vote of the people. Approval of the higher tax rate shall be by at least a majority of votes cast, except:
 (a) When a higher tax rate, before reduction, would have required approval by at least two-thirds of the votes cast, any vote to exceed the tax rate ceiling shall require approval by at least two-thirds of the votes cast;
 (b) When a higher tax rate, before reduction, could have been approved by a majority of the votes cast, the maximum tax rate increase that can be approved by a majority after reduction shall be computed as follows: The maximum cumulative percent the original tax rate ceiling can be increased by a majority vote in the future shall be the same percent which the tax rate prior to reduction was exceeded by the maximum tax rate that could be voted by a majority; and
 (c) When a higher tax rate, before reduction, would have required approval of the governing body without approval of voters, the tax rate ceiling may be increased by action of the governing body in years following reduction, by the same percentage the rate could have been increased without approval of the voters before the tax rate was reduced. For this purpose any political subdivision that before general reassessment had eliminated its tax rate shall be deemed to have been levying one cent per one hundred dollars valuation before general reassessment.
 (2) When the voters approve an increase in the tax rate, the increased tax rate becomes the new tax rate ceiling.
 (3) The governing body of any political subdivision except a school district may levy a tax rate lower than its tax rate ceiling and may increase that lowered tax rate to a level not exceeding the tax rate ceiling without voter approval.
We believe that subsection 6, quoted above, applies to increases in tax rates subsequent to a tax rate reduction or revision pursuant to either the statutory general reassessment rollback provisions or the Hancock Amendment tax rate rollback provisions. See Section 137.073.5(2), as enacted by S.C.S.H.S.H.C.S.H.B. 1022, 1032 and 1169, the relevant part of which is quoted above. In fact subsection 6(1) of Section137.073, as enacted by S.C.S.H.S.H.C.S.H.B. 1022, 1032 and 1169, expressly provides that it applies to tax rate ceilingsestablished pursuant to this section, and subsection 5(2) thereof requires the calculation of tax rate reductions or revisions under both the general reassessment tax rate rollback provisions and the Hancock Amendment.
Subsection 6 of Section 137.073, as enacted by S.C.S.H.S.H.C.S.H.B. 1022, 1032 and 1169, uses the term "tax rate ceiling", which is defined in subsection 1(4) of Section137.073, as enacted by S.C.S.H.S.H.C.S.H.B. 1022, 1032 and 1169, as follows:
 1. As used in this section, the following terms mean:
* * *
 (4) "Tax rate ceiling", a tax rate as revised or reduced by the taxing authority to comply with the provisions of this section or when a court has determined the tax rate reduction. This is the maximum tax rate that may be levied in the year of tax rate revision or reduction and in subsequent years, unless a higher tax rate ceiling is approved by voters of the political subdivision as provided in this section;
 A. Maximum Tax Rate Without Voter Approval
Part A of your first question asks what is the City's maximum permissible general operating property tax rate for 1986 which can be enacted by the governing body of the City without voter approval. Under the facts hypothesized, we conclude that the City's maximum permissible general operating levy for 1986 which may be imposed without voter approval is seventy-five cents ($.75) per one hundred dollars ($100.00) assessed valuation.
Section 137.073.6(1), as enacted by S.C.S.H.S.H.C.S.H.B. 1022, 1032 and 1169, provides that the tax rate ceiling established pursuant to that section shall not be exceeded in the year of the tax rate reduction or thereafter unless a higher tax rate is approved by a vote of the people. The definition of the term "tax rate ceiling", in Section 137.073.1(4), as enacted by S.C.S.H.S.H.C.S.H.B. 1022, 1032 and 1169, states that the tax rate ceiling is a tax rate as revised or reduced by the taxing authority to comply with the provisions of that section. This definition also states that the tax rate ceiling is the maximum tax rate which may be levied in the year of the tax rate reduction or revision and in subsequent years unless a higher tax rate ceiling is approved by the voters of the political subdivision as provided in that section. These statutes establish the proposition that the tax rate ceiling established pursuant to Section 137.073, as enacted by S.C.S.H.S.H.C.S.H.B. 1022, 1032 and 1169, is the maximum tax rate which can be imposed without a vote of the people. Subsection 5(2) of Section 137.073, as enacted by S.C.S.H.S.H.C.S.H.B. 1022, 1032 and 1169, requires political subdivisions to calculate their tax rate rollbacks or revisions under both the statutory general reassessment provisions and the Hancock Amendment provisions. Thus, when a political subdivision establishes its tax rate ceiling pursuant to Section 137.073, as enacted by S.C.S.H.S.H.C.S.H.B. 1022, 1032 and 1169, subsection 6(1) thereof requires it to utilize both the statutory general reassessment rollback provisions and the Hancock Amendment rollback provisions.
You have hypothesized that the City's rollback rate in 1985 is seventy-five cents ($.75) per one hundred dollars ($100.00) of assessed valuation. This is the City's tax rate ceiling under Section 137.073, as enacted by S.C.S.H.S.H.C.S.H.B. 1022, 1032 and 1169, and this rate may not be exceeded without voter approval.
 B. Maximum Tax Rate Which Can Be Authorized By a Simple Majority of the Votes Cast
Part B of your first question asks what is the City's maximum property tax rate for 1986 which can be authorized by a simple majority of the voters. We conclude that the City's maximum general operating levy for 1986 which can be approved by a simple majority of the voters is one dollar ($1.00) per one hundred dollars ($100.00) of assessed valuation.
Section 137.073.6(1), as enacted by S.C.S.H.S.H.C.S.H.B. 1022, 1032 and 1169, states that: "Approval of the higher tax rate shall be by at least a majority of votes cast, except: . . ." This language establishes the general principle that approval of the higher tax rate is by at least a majority of the votes cast, unless one of the exceptions listed in subparagraphs (a), (b), or (c) of paragraph (1) of subsection 6 of Section137.073, as enacted by S.C.S.H.S.H.C.S.H.B. 1022, 1032 and 1169, applies.
As previously indicated, prior to the tax rate reduction, the Constitution and statutes allowed the City to impose a one dollar ($1.00) operating levy without voter approval and to increase that levy above one dollar ($1.00) under certain circumstances upon the approval of two-thirds of the voters. As the City was at its maximum nonvoter-approved levy prior to reduction, the exception in subparagraph (c) does not apply. As there was no provision for the increase in tax rates by simple majority vote prior to tax rate reduction, subparagraph (b) does not apply. Also, because we view the one dollar ($1.00) levy, which existed prior to the tax rate reduction, as being a separate levy than that authorized by Missouri Constitution, Article X, Section 11(c), and Section 94.060.1, RSMo 1978, there was no "two-thirds majority tax rate" to reduce prior to reduction. Thus, subparagraph (a) does not apply. As none of the exceptions in subparagraphs (a), (b) or (c) apply, it would appear that Section 137.073.6(1), as enacted by S.C.S.H.S.H.C.S.H.B. 1022, 1032 and 1169, would authorize the City to increase its tax rate ceiling from seventy-five cents ($.75) to one dollar ($1.00) by a simple majority of the votes cast.
 C. Maximum Tax Rate Which Can be Approved by a Two-Thirds Majority of The Votes Cast
Part C of your first question asks what is the City's maximum property tax rate for 1986 which can be authorized by a two-thirds majority of the votes cast. We conclude that if the City is authorized to impose a levy by a two-thirds majority of the votes cast, it can levy up to thirty cents ($.30) above the one dollar ($1.00) levy discussed in part B of your first question; thus, allowing the City to have a total general operating levy of one dollar and thirty cents ($1.30) per one hundred dollars ($100.00) of assessed valuation in 1986.
As we view the City's pre-rollback rate of one dollar ($1.00) as being a separate levy from those authorized in Missouri Constitution, Article X, Section 11(c), and Section94.060.1, RSMo 1978, which authorize certain "two-thirds majority tax rates", there were no pre-rollback "two-thirds majority tax rates" in existence in the hypothetical which you present. This means that there was no "two-thirds majority tax rate" to reduce in 1985, and the tax rate rollback statute, Section 137.073, as enacted by S.C.S.H.S.H.C.S.H.B. 1022, 1032 and 1169, does not apply.
Section 94.060.1, RSMo 1978, limits the "two-thirds majority tax rate" to thirty cents ($.30) per one hundred dollars ($100.00) of assessed valuation. Thus, the City may impose an additional levy of thirty cents ($.30) in 1986 with the approval of two-thirds of the votes cast; this levy is in addition to the one dollar ($1.00) levy authorized as discussed in part B of your first question.
 D. Do the Parts B and C Property Tax Maximums Continue Indefinitely?
Part D of your first question asks if the maximum property tax rates referred to in parts B and C of your first question continue indefinitely. We conclude that the maximum property tax rate discussed in part B continues until a conflicting assessment and equalization maintenance plan tax rate ceiling is established under Section 137.115.1(2), as enacted by Conference Committee Substitute for House Committee Substitute for Senate Substitute for Senate Bill No. 476, Eighty-Third General Assembly, Second Regular Session; the part C maximum tax rate lasts for a period not to exceed four (4) years and is subject to any applicable reductions prior to the expiration of the authority to impose this rate.
Discussion of the Simple Majority Tax Rate Ceiling. In part B of your first question, we concluded that the City could increase its tax rate ceiling from seventy-five cents ($.75) to one dollar ($1.00) upon a simple majority vote of the voters. Section 137.073.6(2), as enacted by S.C.S.H.S.H.C.S.H.B. 1022, 1032 and 1169, provides: "When the voters approve an increase in the tax rate, the increased tax rate becomes the new tax rate ceiling." Accordingly, if the voters approve a tax rate increase from seventy-five cents ($.75) to one dollar ($1.00) for the City, the City's new tax rate ceiling becomes one dollar ($1.00) per one hundred dollars ($100.00) assessed valuation. Section 137.073.6(1), as enacted by S.C.S.H.S.H.C.S.H.B. 1022, 1032 and 1169, provides that: "In all political subdivisions except school districts, the tax rate ceiling established pursuant to this section shall not be exceeded in the year of the tax rate reduction or thereafter unless . . . ." (Emphasis added.) Also, the definition of the term "tax rate ceiling" in Section 137.073.1(4), as enacted by S.C.S.H.S.H.C.S.H.B. 1022, 1032 and 1169, provides that the tax rate ceiling "is the maximum tax rate that may be levied in the year of tax rate revision or reduction and in subsequentyears, unless . . .". (Emphasis added.) However, Section137.115.1(1), as enacted by Conference Committee Substitute for House Committee Substitute for Senate Substitute for Senate Bill No. 476, Eighty-Third General Assembly, Second Regular Session, requires the reassessment of property in 1987 and in every odd-numbered year thereafter. Paragraph (2) of Section 137.115.1, as enacted by Conference Committee Substitute for House Committee Substitute for Senate Substitute for Senate Bill No. 476, Eighty-Third General Assembly, Second Regular Session, requires political subdivisions to revise their rates of levy in the year any assessment and equalization maintenance plan is implemented. Paragraph (2) also states: "The provisions for setting and revising rates of levy under this section shall prevail in event of conflict with provisions of section 137.073
resulting from implementing an assessment and equalization maintenance plan in each odd-numbered year, and the revised rate determined under this section shall become the tax rate ceiling as defined under section 137.073 and such rate may be increased only in the manner provided by law and the constitution." We do not opine on whether this language requires the revision of tax rates rolled back under the Hancock Amendment.
Therefore, we conclude that if the City obtains simple majority approval of the voters to increase its tax rate from seventy-five cents ($.75) to one dollar ($1.00), the new tax rate ceiling is one dollar ($1.00) per one hundred dollars ($100.00) assessed valuation and this tax rate ceiling continues until a conflicting assessment and equalization maintenance plan tax rate ceiling is adopted under Section 137.115.1(2), as enacted by Conference Committee Substitute for House Committee Substitute for Senate Substitute for Senate Bill No. 476, Eighty-Third General Assembly, Second Regular Session.
Discussion of the "Two-Thirds Majority" Maximum PropertyTax Rate. In part C of your first question, we concluded that the City could impose an additional thirty cent ($.30) levy by a two-thirds majority of the votes cast. This levy is limited by Missouri Constitution, Article X, Section 11(c) and Section94.060.1, RSMo 1978, to a period not to exceed four (4) years. Thus, the City's authority to impose a tax rate upon a vote of two-thirds of the votes cast ceases after four (4) years and is subject to any applicable reductions prior to the expiration of the authority to impose this rate.
 E. New Park Levy
Part E. 1 of your first question asks if the governing body of the City desires to enact a new property tax for parks in 1986, what is the maximum rate which can be authorized by the voters. We conclude that the maximum City park tax that can be imposed by a vote of the people in 1986 is forty cents ($.40) per one hundred dollars ($100.00) assessed valuation.
Missouri Constitution, Article X, Section 11(c), provides in part:
 [A]nd provided further, that any county or other political subdivision, when authorized by law and within the limits fixed by law, may levy a rate of taxation on all property subject to its taxing powers in excess of the rates herein limited, for a library, hospital, public health, recreation grounds and museum purposes.
Section 94.070(3), RSMo 1978, states:
 In addition to the levy aforesaid for general municipal purposes, all cities of the third class are hereby authorized to levy annually not to exceed the following rates of taxation on all property subject to its taxing power for the following special purposes:
* * *
 (3) For recreational grounds in the manner and at the rate authorized under the provisions of sections 90.500 to 90.570, RSMo.
Section 90.500.1 and .3, RSMo 1978, limit a third class city's park tax to forty cents ($.40) per one hundred dollars ($100.00) assessed valuation.
As no City park tax existed at the time the City's tax rates were reduced, there is no tax rate ceiling under Section137.073, as enacted by S.C.S.H.S.H.C.S. H.B. 1022, 1032 and 1169, because there was no tax to reduce. Therefore, the maximum City park tax which can be imposed by a vote of the people in 1986 is forty cents ($.40) per one hundred dollars ($100.00) assessed valuation.
Part E. 2 of your first question asks whether the City park tax must be approved by a simple majority of the votes cast or by a two-thirds majority. We have found that the tax rate reduction statute, Section 137.073, as enacted by S.C.S.H.S.H.C.S.H.B. 1022, 1032 and 1169, does not apply to new taxes imposed after a tax rate reduction. We find no authority requiring that the City park tax be approved by a two-thirds majority of the votes cast. We conclude that a simple majority approval is sufficient. See Missouri Constitution, Article X, Section 22(a); Section 90.500, RSMo 1978.
 II.
Your second question asks:
 II. If an ambulance district 1) was authorized by the voters to levy a property tax rate of $0.15 per $100 assessed valuation at an election prior to 1980, 2) in 1980 levied a property tax of $0.15, 3) in 1984 levied a property tax of $0.15, and 4) in 1985 was required to reduce its property tax rate to $0.08 because of the constitutional and statutory provisions requiring a reduction in property taxes in the year a general reassessment occurs,
 A. What is the maximum permissible property tax rate for 1986 which can be enacted by the governing body of the district without voter approval?
 B. What is the district's maximum property tax rate for 1986 which can be authorized by a simple majority of the voters?
 C. What is the district's maximum property tax rate for 1986 which can be authorized by a two-thirds majority of the voters?
 A. Maximum Tax Rate Without Voter Approval
Part A of your second question asks what is the maximum 1986 general operating levy that the ambulance district in question can impose without voter approval. We conclude that the ambulance district in question may impose a general operating levy of up to eight cents ($.08) per one hundred dollars ($100.00) of assessed valuation in 1986 without voter approval.
Under Section 190.035, RSMo 1978, the maximum general operating levy for an ambulance district was fifteen cents ($.15) for each one hundred dollars ($100.00) of assessed valuation. In 1984, the limit on the general operating levy of ambulance districts was increased to thirty cents ($.30) per one hundred dollars ($100.00) assessed valuation. Section 190.035, RSMo Supp. 1984.
Under the facts you have hypothesized, however, it is clear that the governing body of the ambulance district may not increase its general operating levy without a vote. See
Missouri Constitution, Article X, Section 22(a); Section137.073.1(4) and .6(1), as enacted by S.C.S.H.S.H.C.S.H.B. 1022, 1032 and 1169. Therefore, the maximum tax rate which the governing body of the ambulance district can impose without voter approval in 1986 is eight cents ($.08) per one hundred dollars ($100.00) assessed valuation.
 B. Maximum Tax Rate With Approval By Simple Majority of the Votes Cast
Part B of your second question asks what is the ambulance district in question's maximum general operating levy for 1986 that can be authorized by a simple majority of the votes cast. We conclude that the ambulance district in question can increase its general operating levy from eight cents ($.08) to sixteen cents ($.16) in 1986 with the approval of a simple majority of the votes cast.
Under the facts you have hypothesized, in 1985, the year of the tax rate reduction, the ambulance district was not at its statutory maximum. The district was levying fifteen cents ($.15) per one hundred dollars ($100.00) assessed valuation and the statutory maximum prior to the tax rate reduction was thirty cents ($.30) per one hundred dollars ($100.00) assessed valuation. It is clear that prior to the tax rate reduction the ambulance district would have had to obtain a simple majority vote to raise its tax rate from fifteen cents ($.15) per one hundred dollars ($100.00) assessed valuation to thirty cents ($.30) per one hundred dollars ($100.00) assessed valuation. Missouri Constitution, Article X, Section 22(a).
As we view the situation, subparagraph (b) of subsection 6(1) of Section 137.073, as enacted by S.C.S.H.S.H.C.S.H.B. 1022, 1032 and 1169, applies. We view that statute as establishing the following formula:
Maximum Tax Rate Maximum Which Can Be Tax Rate Imposed After A Prior To Tax Rate Tax Rate = Reduction x After Reduction With Tax Rate Reduction The Approval Prior To Of A Simple Reduction Majority Of The Votes Cast
Applying this formula to the facts hypothesized, we arrive at the following:
Maximum Tax Rate Which Can Be Imposed After $.30 Tax Rate Reduction = ---- x $.08 = $.16 With The Approval Of A $.15 Simple Majority Of The Votes Cast
Thus, we conclude that the maximum tax rate which the ambulance district can impose after tax rate reduction with a simple majority vote is sixteen cents ($.16) per one hundred dollars ($100.00) assessed valuation.
 C. Maximum Tax Rate With a Two-Thirds Majority Vote
Part C of your second question asks what is the ambulance district's maximum property tax rate for 1986 which can be authorized by two-thirds majority of the votes cast. We conclude that the ambulance district cannot increase its general operating levy above the sixteen cent ($.16) level discussed in part B of your second question by approval of a two-thirds majority of the votes cast.
Section 137.073.6(1)(b), RSMo Supp. 1985 (repealed), contained the words, "any increase in the tax rate ceiling beyond that percent shall require approval by at least two-thirds of the votes cast;". Thus, under the prior version of the statute, the ambulance district could increase its general operating fund from sixteen cents ($.16) to thirty cents ($.30) per one hundred dollars ($100.00) of assessed valuation in 1986 with the approval of a two-thirds majority of the votes cast.
This language in Section 137.073.6(1)(b), RSMo Supp. 1985, was repealed by the version of the statute enacted by S.C.S.H.S.H.C.S.H.B. 1022, 1032 and 1169. Accordingly, we conclude that, under the new version of the statute, the ambulance district cannot increase its general operating levy above the sixteen cent ($.16) level discussed in part B of your second question by approval of a two-thirds majority of the votes cast.
 III.
Your third question asks:
 III. If a taxing district 1) by statute could have been authorized to levy a property tax of $0.25 per $100 assessed valuation if approved by the voters, 2) at an election prior to 1980 had been authorized by the voters to levy a property tax of $0.10, 3) in 1980 levied a property tax of $0.10, 4) in 1984 levied a property tax of $0.10, and 5) in 1985 was required to reduce its property tax rate to $0.06 because of the constitutional and statutory provisions requiring a reduction in property taxes the year a general reassessment occurs,
 A. What is the maximum permissible property tax rate for 1986 which can be enacted by the governing body of the district without voter approval?
 B. What is the district's maximum property tax rate for 1986 which can be authorized by a simple majority of the voters?
 C. What is the district's maximum property tax rate for 1986 which can be authorized by a two-thirds majority of the voters?
We assume that the taxing district in question is not a school district, see Section 137.073.7, as enacted by S.C.S.H.S.H.C.S.H.B. 1022, 1032 and 1169, or a fire protection district, see Section 321.244, as enacted by House Bill No. 877, Eighty-Third General Assembly, Second Regular Session. We also assume that the statute mentioned in your question, authorizing the taxing district to levy a property tax of twenty-five cents ($.25) per one hundred dollars ($100.00) assessed valuation by voter approval, requires only a simple majority voter approval.
 A. Maximum Tax Rate Without Voter Approval
Part A of your third question asks what is the maximum permissible property tax rate for 1986 which can be enacted by the governing body of the taxing district without voter approval. We conclude that under Section 137.073.1(4) and .6(1), as enacted by S.C.S.H.S.H.C.S.H.B. 1022, 1032 and 1169, the maximum permissible property tax rate for 1986 which can be enacted by the governing body of the district without voter approval is six cents ($.06) per one hundred dollars ($100.00) assessed valuation.
 B. Maximum Property Tax Rate With Approval of A Simple Majority of the Votes Cast
Part B of your third question asks what is the taxing district's maximum property tax rate for 1986 which can be authorized by a simple majority of the voters. Applying the formula set forth in response to your second question, we arrive at the conclusion that the taxing district's maximum property tax rate for 1986 which can be authorized by a simple majority of the voters is fifteen cents ($.15) per one hundred dollars ($100.00) assessed valuation.
 C. Maximum Property Tax Rate With A Two-Thirds Majority Voter Approval
Part C of your third question asks what is the taxing district's maximum property tax rate for 1986 which can be authorized by a two-thirds majority of the voters. We conclude that the taxing district may not increase its general operating levy above the fifteen cent ($.15) level by a two-thirds majority of the votes cast.
As discussed with regard to part C of your second question, S.C.S.H.S.H.C.S.H.B. 1022, 1032 and 1169 repealed the authority for tax rate increases by a two-thirds vote under Section137.073.6(1)(b), RSMo Supp. 1985. Therefore, the taxing district in question cannot increase its tax rate by a two-thirds majority of the votes cast.
 IV.
Your fourth question asks:
 IV. If a taxing district 1) by statute prior to 1985 was authorized to levy a property tax of $0.10 per $100 assessed valuation if approved by the voters, 2) at an election prior to 1980 had been authorized by the voters to levy a property tax of $0.10, 3) in 1980 levied a property tax of $0.10, 4) in 1984 levied a property tax of $0.10, 5) in 1985 was required to reduce its property tax rate to $0.04 because of the constitutional and statutory provisions requiring a reduction in property taxes the year a general reassessment occurs, and 6) by statute taking effect September 28, 1985 (which was after the 1985 property tax rate was set) is authorized to levy a property tax of $0.25 if approved by the voters,
 A. What is the maximum permissible property tax rate for 1986 which can be enacted by the governing body of the district without voter approval?
 B. What is the district's maximum property tax rate for 1986 which can be authorized by a simple majority of the voters?
 C. What is the district's maximum property tax rate for 1986 which can be authorized by a two-thirds majority of the voters?
We understand that this hypothetical is designed to deal with county health center taxes. Section 205.010, RSMo 1978 (repealed), established a statutory maximum of ten cents ($.10) per one hundred dollars ($100.00) assessed valuation for county health center taxes. Section 205.010, RSMo Supp. 1985 (which became effective on September 28, 1985), establishes a maximum county health center tax of twenty-five cents ($.25) per one hundred dollars ($100.00) assessed valuation.
 A. Maximum Property Tax Without Voter Approval
Part A of your fourth question asks what is the maximum permissible property tax rate for 1986 which can be enacted by the governing body of the district without voter approval. We conclude that under Section 137.073.6(1), as enacted by S.C.S.H.S.H.C.S.H.B. 1022, 1032 and 1169, the maximum property tax rate for the district which can be imposed in 1986 without voter approval is four cents ($.04) per one hundred dollars ($100.00) assessed valuation.
 B. Maximum Property Tax for 1986 Which Can Be Approved By a Simple Majority of the Voters
Section 137.073.4(2) of S.C.S.H.S.H.C.S.H.B. 1022, 1032 and 1169 provides:
 (2) For a political subdivision authorized to submit new or increased tax levies to their voters by legislation adopted in 1985, or in any year in which general reassessment occurs in the county containing the major portion of the political subdivision, the subdivision may levy the full amount authorized by such laws on approval of the vote required by the law and the tax rate ceiling of such political subdivision may be increased to recognize the voted increase.
It has been the general view of this office that county health centers are not "political subdivisions" separate and apart from the county, but, rather, county health centers are an agency of the county. See, e.g., Opinion No. 225, Banta, 1974. Therefore, this language is not applicable to the hypothetical in question.
Because the increase in the statutory maximum for property tax rates from ten cents ($.10) to twenty-five cents ($.25) became effective on September 28, 1985, the taxing district was at its statutory maximum of ten cents ($.10) when the 1985 rates were set. See Section 137.055.1, RSMo 1978 (establishing a September 20 deadline for setting of county taxes); Section67.110.1, RSMo Supp. 1984 (which establishes a September 1 deadline for setting tax rates in political subdivisions other than counties). Thus, for the reasons discussed with regard to your first question, subparagraphs (a), (b) and (c) of paragraph (1) of subsection 6 of Section 137.073, as enacted by S.C.S.H.S.H.C.S.H.B. 1022, 1032 and 1169, do not apply. The general rule stated in Section 137.073.6(1), as enacted by S.C.S.H.S.H.C.S.H.B. 1022, 1032 and 1169, governs, which states: "Approval of the higher tax rate shall be by at least a majority of votes cast, . . .". Accordingly, we conclude that the county health center or taxing district in question could increase its property tax rate from four cents ($.04) per one hundred dollars ($100.00) assessed valuation up to twenty-five cents ($.25) per one hundred dollars ($100.00) assessed valuation in 1986 with the approval of a simple majority of the votes cast.
 C. Maximum Tax Rate With a Two-Thirds Majority Voter Approval
Part C of your fourth question asks what is the taxing district's maximum property tax rate for 1986 which can be authorized by two-thirds majority of the votes cast. We have concluded, in part B of your fourth question, that the taxing district can increase its tax rate up to its statutory maximum by simple majority vote. Voter approval by two-thirds majority of the property tax rate cannot increase the rate above the twenty-five cent ($.25) limitation set forth in Section 205.010, RSMo Supp. 1985.
 V.
Your fifth question asks:
 V. If a third class city 1) in 1980 levied a property tax for its General Revenue Fund of $0.60 per $100 assessed valuation, 2) in 1984 levied a property tax for its General Revenue Fund of $0.30, 3) in 1985 was required to reduce its property tax rate for its General Revenue Fund to $0.20 because of the constitutional and statutory provisions requiring a reduction in property taxes the year a general reassessment occurs,
 A. What is the city's maximum permissible property tax rate for 1986 for its General Revenue Fund which can be enacted by the governing body of the city without voter approval?
 B. What is the city's maximum property tax rate for 1986 for its General Revenue Fund which can be authorized by a simple majority of the voters?
 C. What is the city's maximum property tax rate for 1986 for its General Revenue Fund which can be authorized by a two-thirds majority of the voters?
 A. Maximum Tax Rate Without Voter Approval
Part A of your fifth question asks what is the maximum permissible general operating levy for 1986 which can be enacted by the governing body of the City without voter approval. We conclude that the City can impose a general operating levy of up to forty cents ($.40) per one hundred dollars ($100.00) of assessed valuation in 1986 without voter approval.[1]
Immediately prior to the tax rate reduction, the City's general operating levy was thirty cents ($.30). The City's 1980 general operating levy was sixty cents ($.60) per one hundred dollars ($100.00) assessed valuation. Thus, in 1984, immediately preceding the tax rate reduction, the City was below its Hancock Amendment limit. See Missouri Constitution, Article X, Section 22(a). Accordingly, immediately prior to the tax rate reduction the City could have increased its general operating levy from thirty cents ($.30) to sixty cents ($.60) without voter approval.
As we view the situation, subparagraph (c) of paragraph (1) of subsection 6 of Section 137.073, as enacted by S.C.S.H.S.H.C.S.H.B. 1022, 1032 and 1169, applies. We believe the following formula sets forth the requirements in subparagraph (c):
Maximum Tax Rate Maximum Tax After Reduction Rate Prior Tax Rate Which Can be = to Reduction x After Imposed Without Tax Rate Prior Reduction Voter Approval to Reduction
Applying the above formula to the facts hypothesized, we calculate the maximum property tax rate which can be imposed without voter approval as follows:
Maximum Tax Rate After Reduction $.60 Which Can be = ---- x $.20 = $.40 Imposed Without $.30 Voter Approval
 B. Maximum Tax Rate With Approval By By a Simple Majority of the Votes Cast
Part B of your fifth question asks what is the City's maximum 1986 general operating levy which can be imposed with the approval of a simple majority of the votes cast. We conclude that the City may increase its 1986 general operating levy from the forty cent ($.40) level discussed in part A of your fifth question up to one dollar ($1.00) per one hundred dollars ($100.00) assessed valuation by simple majority vote.
The forty cent ($.40) levy discussed in part A of your fifth question becomes a new tax rate ceiling. When one applies paragraph (1) of Section 137.073.6, as enacted by S.C.S.H.S.H.C.S.H.B. 1022, 1032 and 1169, it is possible to construe the statute so that subparagraph (c) applies again; however, we do not believe the General Assembly intended to so limit the taxing authority of political subdivisions. We view subparagraph (c) as an expression of the limitations placed on nonvoter-approved tax levy increases. We also find subparagraph (b) inapplicable, because a higher tax rate before reduction could have been approved by the governing body and need not have been approved by the voters. Thus, the general rule in Section137.073.6(1), as enacted by S.C.S.H.S.H.C.S.H.B. 1022, 1032 and 1169, applies, which allows increases in the tax rate upon the approval of a simple majority of the votes cast. The maximum amount for the City's operating levy is the one dollar ($1.00) limit set out in Missouri Constitution, Article X, Section 11(b).
 C. Maximum Tax Rate With Approval By A Two-Thirds Majority of the Votes Cast
Part C of your fifth question asks what is the City's maximum 1986 general operating levy which can be imposed with the approval of two-thirds majority of the votes cast. We conclude that the City may impose an additional thirty cent ($.30) levy over and above the one dollar ($1.00) levy discussed in part B of your fifth question under Missouri Constitution, Article X, Section 11(c) and Section 94.060.1, RSMo 1978.
 VI.
Your sixth question asks:
 VI. If a third class city 1) had an assessed valuation in 1985 which was less than its assessed valuation in 1984 as a result of the general reassessment which occurred in 1985, 2) in 1980 levied a property tax for its General Revenue Fund of $1.00 per $100 assessed valuation, 3) in 1984 levied a property tax for its General Revenue Fund of $1.00, 4) would have had to levy in 1985 a property tax for its General Revenue Fund of $1.50 to bring in from property taxes substantially the same amount of revenue as was brought in from property taxes in 1984 but actually only levied in 1985 a property tax of $1.00 because the city deemed that to be its limit as provided by Article X, Section 11(b) of the Missouri Constitution,
 A. What is the city's maximum permissible property tax rate for 1986 for its General Revenue Fund which can be enacted by the governing body of the city without voter approval?
 B. What is the city's maximum property tax rate for 1986 for its General Revenue Fund which can be authorized by a simple majority of the voters?
 C. What is the city's maximum property tax rate for 1986 for its General Revenue Fund which can be authorized by a two-thirds majority of the voters?
 A. Maximum Tax Rate Without Voter Approval
Part A of your sixth question asks what is the City's maximum 1986 general operating levy which can be imposed without voter approval. We conclude that the City may impose a levy of up to one dollar ($1.00) per one hundred dollars ($100.00) assessed valuation in 1986 without voter approval.
Subsection 2 of Section 137.073, as enacted by S.C.S.H.S.H.C.S.H.B. 1022, 1032 and 1169, requires political subdivisions to revise their tax rates in the year of a general reassessment to produce "substantially the same amount of tax revenue as was produced in the previous year and, in addition thereto, a percentage of the previous year's revenues equal to the preceding valuation factor of the political subdivision."See, also, Section 137.073.1(4) and .6(1), as enacted by S.C.S.H.S.H.C.S.H.B. 1022, 1032 and 1169 (allowing the setting of tax rate ceilings by "revision"). Following this language, the City would have imposed a one dollar and fifty cent ($1.50) levy in 1985. However, the City's constitutional maximum for the levy in question was one dollar ($1.00) per one hundred dollars ($100.00) assessed valuation. See Missouri Constitution, Article X, Section 11(b).
Section 137.073.4(3), as enacted by S.C.S.H.S.H.C.S.H.B. 1022, 1032 and 1169, provides:
 (3) For a political subdivision revising a tax rate in a year of general reassessment which experiences a reduction in the amount of assessed valuation for that year, due to decisions of the state tax commission or a court under sections 138.430
to 138.433, RSMo, or due to clerical errors or corrections in the calculations or recordation of any assessed valuation:
 (a) Such political subdivision may revise the tax rate ceiling for each purpose it levies taxes to compensate for the reduction in assessed value occurring after the political subdivision calculated the tax rate ceiling in the year of general reassessment, for purposes of taxes levied in the year following general reassessment and subsequent years. Such revision by the political subdivision shall be made at the time of the next calculation of the tax rate after the reduction in assessed valuation has been determined;
 (b) In addition, only in the year following the reduction in assessed valuation as a result of circumstances defined in subdivision (3) of subsection 4 of this section, such political subdivision may levy a tax rate for each purpose it levies taxes above the tax rate ceiling adjustment provided in paragraph (a) of this subdivision to recoup any revenues it was entitled to receive for the prior year;
 (c) Provided, any adjustments in tax rates and tax rate ceilings permitted by this subdivision shall not exceed a rate limit specified in statute or the constitution or levels previously approved by voters.
Under the circumstances hypothesized in your sixth question, subparagraphs (a) and (b) of Section 137.073.4(3), as enacted by S.C.S.H.S.H.C.S.H.B. 1022, 1032 and 1169, wouldappear to allow the City to impose a one dollar and fifty cent ($1.50) levy in 1986, if the conditions set forth in such subparagraphs are met. However, subparagraph (c) of Section137.073.4(3), as enacted by S.C.S.H.S.H.C.S.H.B. 1022, 1032 and 1169, limits the adjustments under subparagraphs (a) and (b) to rate levels specified in a statute or the Constitution. Thus, the City is limited to a nonvoter-approved levy of one dollar ($1.00) in 1986 if Section 137.073.4(3), as enacted by S.C.S.H.S.H.C.S.H.B. 1022, 1032 and 1169, applies.
If the above-quoted statute does not apply, then subsections .1(4), .2 and .6(1) of Section 137.073, as enacted by S.C.S.H.S.H.C.S.H.B. 1022, 1032 and 1169, do not authorize the revision of tax rates to rates higher than those authorized by Missouri Constitution, Article X, Section 11(b).
 B. Maximum Tax Rate With Approval By A Simple Majority of the Votes Cast
Part B of your sixth question asks what is the City's maximum 1986 general operating levy which can be authorized by a simple majority of the votes cast. We conclude that the City cannot increase its 1986 general operating levy above the one dollar ($1.00) levy discussed in part A of your sixth question with approval of a simple majority of the votes cast.
Because the assessed valuation of the City decreased in the year of the general reassessment, there was no tax rate rollback and Section 137.073, as enacted in S.C.S.H.S.H.C.S.H.B. 1022, 1032 and 1169, does not apply. There is no authority by which the City may increase its 1986 general operating levy by simple majority vote.
 C. Maximum Tax Rate With Approval By A Two-Thirds Majority of the Votes Cast
Part C of your sixth question asks what is the City's maximum 1986 general operating levy which can be authorized by two-thirds of the votes cast. We conclude that the City may impose an additional thirty cent ($.30) levy with the approval of two-thirds of the votes cast. See Missouri Constitution, Article X, Section 11(c); Section 94.060.1, RSMo 1978.
CONCLUSION
It is the opinion of this office that the political subdivisions and taxing authorities in question may impose property tax rates up to the maximums discussed herein.
Very truly yours,
 WILLIAM L. WEBSTER Attorney General
NOTES
[1] We note that the definition of "tax revenue" in Section 137.073.1(5) was revised by S.C.S.H.S.H.C.S.H.B. 1022, 1032 and 1169 to provide: "For purposes of political subdivisions which were authorized to levy a tax in the year prior to general reassessment but which did not levy such tax, the term `tax revenue', as used in relation to the reduction or revision of tax levies mandated by law for the year of general reassessment or a subsequent year, shall mean that amount which such political subdivisions would have received in their fiscal year which included or ended on December thirty-first of the year prior to general reassessment had they levied the tax they were authorized to levy in that same fiscal year." This provision was not in effect in 1985 when the city in your hypothetical calculated its tax rate ceiling. We do not believe the City is authorized to recalculate its 1985 tax rate ceiling to take into account this revision in the definition of "tax revenue". Where the legislature has intended revisions enacted by S.C.S.H.S.H.C.S.H.B. 1022, 1032 and 1169 to result in a recalculation of the tax rate ceiling initially calculated in 1985, the legislature has expressly so provided. See the recalculation permitted due to annexations in 1985 contained in Section 137.073.1(5) and Section 137.073.4(3), as enacted by S.C.S.H.S.H.C.S.H.B. 1022, 1032 and 1169.